## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------X
```
UNITED STATES OF AMERICA,       :

                                    :

*Plaintiff,*                        :         Cr. No. 16-cr-10323-FDS

                                    :

                v.                 :

                                    :

JOSEPH L. ANGELO, JR.,         :

                                    :

*Defendant.*                     :
```
-------------------------------------------------------------X
```

### DEFENDANT'S SENTENCING MEMORANDUM AND
### REQUEST FOR DOWNWARD VARIANCE

The Defendant Joseph L. Angelo, Jr., through the undersigned counsel, respectfully submits this Sentencing Memorandum in support of (1) his request for a downward variance, (2) a waiver of any fine or restitution, or alternatively, deferral of collection of any fine or restitution the Court may impose on the Defendant, and (3) a recommendation from the Court to the Bureau of Prisons ("BOP") for placement in the nearest appropriate institution, should the Court deem that imprisonment is appropriate in this case.

1.     *Downward Variance.*

       A.     Legal Background.

       (i)     General Principles.

It is well-established that sentencing judges have the power to depart from the Sentencing Guidelines. One of the most common reasons for issuing a

downward variance is when a case has an "atypical" offender which justifies a departure from the Guideline Range. *See United States v. Rita*, 551 U.S. 338, 344 (2007) (holding that a traditional departure is justified "on the ground that [the defendant's] circumstances present an "atypical case" that falls outside the "heartland" to which the United States Sentencing Commission intends each individual Guideline to apply) (citing USSG § 5K2.0(a)(2)); *Koon v. United States*, 518 U.S. 81, 100 (1996) ("the severity of the misconduct, its timing, and the disruption it causes" are factors which influence a district court's determination of whether the misconduct in a particular instance makes the case atypical).

In *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008), the panel, in interpreting departure guidance handed down by the Supreme Court in *Gall v. United States*, 552 U.S. 38 (2007), issued the general rules to be followed by sentencing courts when using their discretion and departing from the advisory Guidelines. The *Martin* court directed that once a judge determines the proper Guideline Range, the district court must then "assess the appropriateness" of any departure, and "may not mechanically assume" that the Guideline Range "frames the boundaries of a reasonable sentence in every case." It went on to say that the sentencing judge should use "a case-by-case approach, the hallmark of which is flexibility," and that "the court should 'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Id.* 91 (citing to *Gall*). In considering variances, the sentencing judge should base their

decisions on factors that are "typically rooted either in the nature and circumstances of the offense or the characteristics of the offender". *Id.*

 (ii) Specific Cases.

 The First Circuit's courts, along with other Federal courts, have endorsed deviations from the Guideline Range in certain cases, whether they called such deviations "variances" or "departures."

 For example, *United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012) involved two defendants in the "Big Dig" project who had defrauded the Government by scheming for years to provide cement that was inferior to the specifications required by contract, and doing so through sophisticated means, including having their employees falsify paperwork on a routine basis and changing their mixture routines when inspectors came to verify that they were mixing the cement properly. The sentencing court (STEARNS, *J.*) used the recommended calculation for "loss" in determining the Offense Level, although the sentencing judge noted that he was not concerned with the actual loss estimation and instead "offered a plausible explanation of [a] refusal to allow the loss estimate to control [his] sentencing determination." *Id.* 44. The Guideline Range calculated a sentence of 87-108 months imprisonment. However, in lieu of any imprisonment, the Court sentenced both defendants to "six months home monitoring, three years probation, and 1,000 hours of community service, and a modest fine." *Id.* 41. The First Circuit upheld the judge's departure and held it reasonable.

In *Martin*, 520 F.3d at 89-90, the sentencing judge determined that the defendant was a career offender and his Guideline Range was 235-293 months. The Circuit Court upheld the judge's downward variance to a 144-month sentence, however, finding the sentencing judge had been reasonable when he stated that the defendant had "positive things" going for him, *inter alia,* his close relationship with his family, and that the defendant had shown a "strong commitment to a law-abiding life".

In *United States v. Perella*, 273 F.Supp.2d 162, (D.Mass. 2003) the defendant was convicted of bank robbery and the Guideline Range was 30-37 months. The Court determined that the defendant's conduct stemmed from a drug addiction and that "the defendant has totally changed his life and his behavior after residential and outpatient drug treatment and addiction programs" and that such rehabilitation efforts warranted a downward variance to probation. *Id* 63. Similarly, in *United States v. Woodley*, 344 F.Supp. 2d 274, 275-276 (D.Mass. 2004) the sentencing judge found that a rehabilitation factor (along with an overstatement of criminal history) warranted a departure downwards from career-offender status in a bank robbery conviction with a 151-188 months Guideline Range to an actual sentence of 84 months. *See further, United States v. Roselli,* 366 F.3d 58, 70 (1st Cir. 2004) (departure warranted where defendant's child afflicted with CF); *United States v. Silveira* 426 F.3d 514, 520 (1st Cir. 2005) (noting that sentencing judge had departed downward because it was an "atypical" case where the defendant's "material false statements were of lesser significance than his

4

material truthful statements."); *United States v. Polito,* 215 Fed.Appx. 354, 357, 2007 WL 313463 at *2 (5th Cir. 1-31-07) (Defendant's child pornography Guidelines of 27-33 months, departed from by sentencing judge to probation and one-year house arrest, reasonable in part because Defendant's post-crime conduct of receiving mental health treatment, maintaining employment, and leading a law-abiding life, made him atypical of the usual similarly situated defendant); *United States v. Autery.* 555 F/3d 864, 875 (9th Cir. 2009) (Defendant convicted of child pornography with Guideline range of 41-51 months, sentencing judge's variance to probation was reasonable in part because it was the defendant's first offense and his Criminal History Level 1 "did not fully account for his complete lack of criminal history," because a defendant with a minor criminal history could still fall within Level I); *United States v. Huckins*, 529 F.3d 1312, 1318 (10th Cir. 2008) (Defendant with child pornography conviction and Guideline Range of 78-97 months, court's variance to 24-month sentence was reasonable because it was defendant's first offense; "although the Guidelines discourage granting a downward departure based upon criminal history when the defendant had been placed in Criminal History Category I... this is not a departure case, it is a variance case ... and, after *Gall* and *Kimbrough*, a factor's disfavor by Guidelines no longer excluded it from consideration under § 3553(a)") (internal citations omitted); *United States v. Cabrera*, 567 F.Supp.2d 271, 279 (D.Mass. 2008) (drug conviction with Guideline Range of 70-78 months, judge's variance to 24 months reasonable in part because recidivism concerns not a factor in the defendant's case and Sentencing

5

Commission's studies support that determination); *United States v. Germosen*, 473 F.Supp.2d 221, 227 (D.Mass. 2007) (in conspiracy to import heroin by swallowing pellets, below advisory Guideline sentence of 6-months home detention was warranted in part because it was defendant's first offense and "there is a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants in Criminal History Category I.")

        B.      The Defendant is an Atypical Offender.

      Except for this one aberration of conduct involved in this case, Mr. Angelo has lived an otherwise completely law-abiding and extraordinarily productive life. Since the last of these offenses occurred, Mr. Angelo has closed his mortgage business, accepted that he suffers from gambling addiction and sought treatment for it, maintained employment as a full-time *Uber* driver, fully accepted responsibility, and resumed leading a law-abiding life, thereby justifying a departure.

      Mr. Angelo is currently 60 years old. At the time of the instant offenses, Mr. Angelo was in his mid-fifties and had not been arrested or charged with any criminal offense for over 30 years. He is not a career offender, the instant crime is non-violent, and Mr. Angelo is not a violent person. He has faithfully followed and abided by the conditions of his release. He does not pose a threat to the community.

      Mr. Angelo was self-employed and operated his own small business, Lease One, for over 22 years, during which time he was an extraordinarily productive member of society. His business employed scores of people over the years, all of

whom earned their livings and paid their taxes, contributing to society as a whole. Though he has admitted to straying off the legal path, he has accepted full responsibility for his mistakes. These mistakes should not diminish the fact that for many, many years his loan-brokerage business helped hundreds, if not thousands, of people obtain necessary business loans.

The above characteristics of Mr. Angelo, it is submitted, warrant that he be deemed an "atypical" offender and that the Court grant a downward variance from the Guideline Range as determined by the Court.

2.    *Fines, Restitution, Payment, etc.*

A.    Inability to Pay.

The Defendant requests that the Court forsake imposing any fines or restitution in this case because Mr. Angelo has no ability to pay them. Mr. Angelo has no property or other assets, including any cash or savings, bonds, stocks, ownership in businesses, automobiles, etc. Any fines or restitution that are made a part of Mr. Angelo's sentence will burden his ability to support himself and his family in the future. As Mr. Angelo is approaching eligibility to receive social security, which payments are meant to help a person survive, to burden him with an order to pay a fine or restitution would jeopardize his well-being and perhaps violate his Eighth Amendment rights to be free of cruel and unusual punishment. Consequently, because Mr. Angelo has no means to pay a fine or restitution, and it is unlikely that he will be able to in the future, it is requested that the Court not impose any monetary penalties on Mr. Angelo.

B.     Deferral of Payments.

Should the Court order payment of a fine or restitution, and the Defendant does receive a prison sentence, the Defendant requests that these monies not be collectable until such time as the Defendant is either released from any prison sentence or is transferred to community confinement before release to allow him sufficient time to obtain employment.

The Defendant currently has no funds or assets of his own, will not have such funds or assets while imprisoned, and will not be able to begin payments until he finds work again once released. While it is true that family members and others may send him small sums of money while imprisoned so he can purchase reasonable amounts of toiletries, sneakers, and other essentials that will allow him to keep himself healthy and maintain an exercise program to reduce his weight problem, these funds, sent to the Defendant for a specific purpose, should not then be susceptible to forfeiture to the Government to pay what he owes them. Without question, should those sending such funds learn that these funds are being virtually confiscated by authorities, then such persons will not send funds any longer.

Moreover, the Court may not be aware, but the BOP's attempts to collect money that is owed cause animosity and problems during a prisoner's sentence. In fact, while the policies of the BOP claim that they "assist" an inmate to determine how much to pay, that is not the case. Instead, what occurs is that a "unit team" reviews the monies an inmate may have received through gifts to his account, and then the unit team *orders* the inmate to make payments of "X-amount" each month,

and if he fails to do so, then he is placed in "refusal" status and is essentially punished for his refusal to remit that amount. This issue is reflected in the attached Code of Federal Regulations policy. (Exhibit A, attached hereto) We respectfully request that this Honorable Court take special note of all the sanctions visited upon an inmate who fails to pay what the BOP determines he should pay.

Consequently, to avoid all these problems, and because the Court can determine that the Defendant does not have the means to pay any of his obligations at this time—and that it is unlikely he will have such means while imprisoned—the Court can Order that any financial obligations owed by the Defendant not be paid until either the Defendant is released from imprisonment, or is placed in a halfway house and can find gainful employment.

3.      Request for Self-Surrender and Court Recommendation.

   A.     Request for Self-Surrender.

Should the Court sentence the Defendant to imprisonment, we request that the Court allow the Defendant to self-report and remain out on bail pending the BOP's designation of where to report. The reason for this is to allow the Defendant time to adjust to the imprisonment term and discuss it with his family, so that he and his family can determine how to resolve family matters until such time as his release and to make all the arrangements to do so. In support of this request, it should be noted that the Defendant has no record of violence; is not a career offender; nor a danger to the community; the crime for which he has been convicted is non-violent; the Defendant is not a violent person; he has faithfully followed all

the conditions of his release; and he is no threat to the community if the above request is granted for the short time the report-order is enforced, which is usually a few weeks.

      B.     Court Recommendation as to Place of Confinement.

While the BOP is not required to follow the Court's recommendation, we request that the Court recommend that the Defendant be designated to the BOP facility in Ayers, Massachusetts (FMC DEVENS). This will enable his wife and family to visit him without creating a financial hardship on anyone. Probation should be able to verify that the Defendant will most likely be designated as a very low security risk by the BOP and thus placement in Devens would not conflict with their policies and would be seriously considered by them, and that the Court's recommendation might tip the balance for such designation.

                         RESPECTFULLY SUBMITTED
                         Joseph L. Angelo, Jr.
                         By his Attorney


                         /s/  Richard C. Chambers, Jr.


                         BBO #651251
                         220 Broadway, Suite 404
                         Lynnfield, MA  01940
                         Telephone: 781-581-2013

Dated:   March 21, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 21, 2018.

/s/ Richard C. Chambers, Jr.

Richard C. Chambers, Jr.
BBO: #651251
220 Broadway, Suite 404
Lynnfield, MA 01940
Telephone: 781-581-2031