```
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
 2

 3

 4    UNITED STATES OF AMERICA,          )
                                         )
 5    vs.                                )  Criminal Action
                                         )
 6    JOSEPH L. ANGELO, JR.,             )  No. 16-10323-FDS
                         Defendant       )
 7                                       )
                                         )
 8                                       )

 9

10    BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

11                              SENTENCING

12

13

14
                John Joseph Moakley United States Courthouse
15                          Courtroom No. 2
                          One Courthouse Way
16                         Boston, MA 02210

17
                            April 30, 2018
18                           2:02 p.m.

19

20

21

22

23                        Valerie A. O'Hara
                       Official Court Reporter
24        John Joseph Moakley United States Courthouse
                     1 Courthouse Way, Room 3204
25                        Boston, MA 02210
                    E-mail: vaohara@gmail.com
```

APPEARANCES:

For The United States:

    United States Attorney's Office, by VICTOR A. WILD, ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way, Suite 9200, Boston, Massachusetts  02110;

For the Defendant:

    Chambers Law Office, by RICHARD CULLIN CHAMBERS, JR., ESQ., 220 Broadway, Lynnfield, Massachusetts 01940.

ALSO PRESENT:  Kelly Bell

<u>PROCEEDINGS</u>

THE CLERK:  All rise.  Thank you.  Please be seated.
Court is now in session in the matter of United States vs.
Joseph Angelo, Criminal Action Number 16-10323.

Would counsel please identify themselves for the
record.

MR. WILD:  Good afternoon, your Honor, Victor A. Wild,
and may I have Kelly Bell at counsel table?

THE COURT:  Yes, good afternoon.

02:02PM  MR. CHAMBERS:  Good afternoon, your Honor, may it
please the Court, Richard Chambers, Jr. for Mr. Angelo, who is
seated to my right.

THE COURT:  All right.  Good afternoon.  This is the
sentencing of Joseph Angelo.  I've received the pre-sentence
report as revised through April 4th, the defendant's sentencing
memorandum, which included a statement from the defendant, from
his wife, and from other friends and family members and
supporters, the government's sentencing memorandum, and I think
I have one victim impact statement involving the Colorado land
02:03PM  deal.  Is that it, Mr. Wild?

MR. WILD:  That's correct, your Honor.

THE COURT:  To my knowledge, that's all of it.  Is
there anything else that I should have seen that I have not,
Mr. Wild?

MR. WILD:  Not that I'm aware of.

1          THE COURT:  Mr. Chambers.

2          MR. CHAMBERS:  No, your Honor.

3          THE COURT:  Mr. Chambers, have you had an opportunity

4     to review the pre-sentence report?

5          MR. CHAMBERS:  Yes, your Honor.

6          THE COURT:  And have you gone over it with the

7     defendant?

8          MR. CHAMBERS:  I have.

9          THE COURT:  Is that correct, Mr. Angelo?

02:03PM 10          THE DEFENDANT:  Yes, yes.

11          THE COURT:  All right.  And, Mr. Wild, are there any

12     victims who wish to participate in the proceeding?

13          MR. WILD:  No, your Honor.

14          THE COURT:  Okay.  Let me turn to the objections.  The

15     government had an objection as to the loss amount for I don't

16     remember if the victim's name is Curry, but, anyway, but Curry

17     is either a person or entity or both.  There's a question how

18     much of the fees or loss is properly attributable to the

19     defendant for these purposes.

02:04PM 20          Based on my review, I think probation has it right.

21     There's kind of an proximate cause question here.  Arguably,

22     the whole thing is attributable to the defendant, but I think

23     that goes too far, and I think the appropriate amount is the

24     $30,000 loan fee and $100,000 in loan extension payments, which

25     would be $130,000, and I would not include the attorney's fees.

1          This is probably all somewhat academic because I don't

2     think restitution is likely to be paid in any significant

3     amount, but unless anyone needs clarification, that's how I

4     propose to handle that objection.

5          MR. WILD:  No, your Honor, indeed, in my sentencing

6     memorandum, we did not press the attorney's fees.

7          THE COURT:  Okay.  All right.  Then the government had

8     a further objection concerning the issue of theft of

9     identification information, which probation agreed to.  The

02:05PM 10     defense objects generally to paragraph 38, which I think

11     outlines the victims.

12          Mr. Chambers, did you have a specific objection you

13     wanted to press on that?

14          MR. CHAMBERS:  Yes, your Honor.  That's a two-level

15     enhancement, and we're objecting to that.  My client has

16     accepted full responsibility for his actions, and when he came

17     before the Court to take a plea, if your Honor recalls, he

18     specifically said he never signed her signature or did anything

19     as far as the victim identity fraud, and I would point out to

02:05PM 20     the Court that in that case, that was Corona Dry Wall, I

21     believe, but that victim actually received the benefit of being

22     financed, and had, in fact, she had an objection, or in fact,

23     she had accused my client of forging her signature, she took

24     the money.

25          And in that case, your Honor, again, there's no

1    evidence before the Court that my client forged her signature

2    or assumed her identity, and I think identity theft is a

3    different type of crime here, and so that's why we're objecting

4    to those enhancements.

5            THE COURT:  Do you want to respond to that, Mr. Wild?

6            MR. WILD:  Only to refer the Court back to the

7    government's sentencing memorandum at pages 5, 6 and 7 and to

8    very briefly state that both on the legal predicate and on the

9    facts of this case, the enhancement clearly applies.

02:06PM 10           The defendant was the one responsible for using that

11   forged signature.  He did gain financially from it.  The person

12   who received it from him is the one who actually went and

13   obtained the loan because he asked her to.

14           So on both a factual -- and she received the forged

15   document from him, so on both the factual and the legal basis,

16   I suggest it fully applies and the fact that he compelled this

17   victim to accept a much smaller loan than she needed under

18   terrible terms of daily interest she couldn't afford does not

19   absolve him of the fact that he had first committed the

02:07PM 20   identity theft.

21           THE COURT:  All right.  Based on paragraphs 27 and 28

22   of the PSR and the analysis the government has adopted by

23   probation at pages 34 and 35, I'm overruling that objection, so

24   I think that takes care of everything.

25           Let me turn to the guideline calculations.  The base

1  offense level is 7.  There's a 14-level enhancement based on

2  the loss amount being between $550,000 and $1.5 million,

3  there's a four-level enhancement based on the number of victims

4  with substantial hardships, the two-level we just talked about

5  for identification theft.  All of that totals up to level 27.

6          There is a downward adjustment for acceptance of

7  responsibility with third level on government motion.

8  Mr. Wild, does the government so move?

9          MR. WILD:  I so move, your Honor.

02:08PM 10          THE COURT:  All right.  That's allowed, and that takes

11  three levels off for a level 24, his criminal history score is

12  0, his criminal history category is I, and that produces a

13  Sentencing Guideline range of 51 to 63 months in prison, a

14  supervised release range of 1 to 3 years, a fine range of

15  $10,000 to somewhere north of $25 million, restitution in the

16  amount of $1,164,568.69 and a special assessment of $100 on

17  each count for a total of $1,100.

18          Is there any further objection or correction?

19          MR. WILD:  No correction from the government.  If I

02:09PM 20  may make a comment, your Honor?

21          THE COURT:  Yes.

22          MR. WILD:  You previously entered an order granting

23  the government's forfeiture motion for a $95,000 lesser amount.

24  That amount has been adjusted upward correctly by the probation

25  department based on further analysis and information, but we do

1    not request a modification of the forfeiture order.

2              THE COURT:  All right.  Mr. Chambers.

3              MR. CHAMBERS:  Judge, the defense would be objecting

4    to the four-level enhancement based on the number of victims

5    and based on the fact that it appears that the government has

6    only one letter from a victim.  There's no other evidence

7    before the Court as far as the financial hardship that these

8    victims have experienced.

9              THE COURT:  All right.  That's overruled.  It's all

02:10PM 10   laid out in the pre-sentence report, so I'm going to leave that

11   where it is, and so with that as the calculation of the

12   guidelines, let me hear first from the government as to its

13   recommendation and then Mr. Chambers.  Mr. Wild.

14             MR. WILD:  The calculations the government submits are

15   correct, and the Court has adopted those.  The Court has the

16   government's sentencing memorandum where we asked the Court to

17   impose 54 months of imprisonment.  That's a mid-guideline

18   range, three years of supervised release, special assessments

19   aggregating $1100 and restitution to be ordered in the

02:10PM 20   $1,164,568.69, and if I may orally amend my last paragraph,

21   your Honor, to match that figure rather than the forfeiture

22   figure that had previously been used in the draft pre-sentence

23   report and in the government's statement of facts to probation

24   before probation completed its analysis.

25             Those are the terms of imprisonment and punishment

1    that the government recommends.  We do so for the reasons set

2    forth in the government's sentencing memorandum, and I know the

3    Court thoroughly reads materials before it takes the bench.

4         I want to simply reiterate that the offenses of this

5    defendant went on for a period of four years.  It's not an

6    one-off, it's not a two-off, it's not a three-off, as our

7    evidence developed.  There were 10 victims in the indictment.

8    We have uncovered at least three more that predated the

9    indictment that involved the same kind of conduct.  Indeed, one

02:11PM 10    of those, a Canadian company.  The defendant used some of funds

11    from the victims in the indictment to pay $50,000 to a previous

12    victim.

13         The defendant claims that he had a gambling addiction.

14    I don't know what evidence he relies on for addiction.  We do

15    know that he gambled a lot.  We do know that from his tax

16    returns, he indicated that his winnings matched his losings for

17    a number of years.  We do know that in the later years before

18    indictment, the amounts were I think $25,000 a year to $32,000

19    a year to $50,000 a year, something of that kind, but in the

02:12PM 20    matters that we relayed to the Court in our sentencing

21    memorandum for what he actually did to expend the funds from

22    the 10 victims in this case totaling more than $1 million,

23    there are, granted, Foxwoods items in there and so forth, but

24    there are a number of others as well.

25         From the victims' funds, he, for example, paid his

1    taxes or some of his taxes totaling more than $33,000, he took

2    out cash totaling $49,019.  He took out payments that were made

3    out to himself in the amount of $105,910.  He paid his own

4    property expenses to the tune of more than $53,000.  As I said,

5    he gave $50,000 to a prior complainant that's beyond the

6    statute of limitations, so these are some of the ways that he

7    expended some of that money.

8         So the idea that gambling made me do this is not

9    justified or warranted at all for what he actually did with the

02:13PM 10   funds from these 10 victims totaling more than $1 million.

11        His activity went on for such a long period of time,

12   bothered so many, both destroyed the business lives at least of

13   several of the victims as laid out in the pre-sentence report,

14   all the while, he was lying to them from the very beginning,

15   telling them that their funds would be in an escrow account

16   when he immediately spent them.

17        Then when they said why are there delays, he gave them

18   excuses everywhere from his mother was dying or had died or an

19   uncle was dying, at one point somebody was racing in the Boston

02:14PM 20   Marathon, and he had to go to support them, all kind of excuses

21   for delays, then when they pressed and pressed and pressed, he

22   sent them a request for refund form, literally preprinted form

23   that he had, assuring them the moment I get that back, your

24   funds will be refunded to you.

25        When they quarreled more with him and demanded their

1    refund more from him, he simply cut off communications

2    entirely.  He even went to the point of threatening some of

3    them.  For example, one of the complainants was the person that

4    the probation department asked about how they lost their entire

5    business as a result of the money deposited with the defendant.

6         And this was Cleaner Bright and in communications with

7    him over and over and over, the owner of Cleaner Bright tried

8    to get his money back, and the defendant simply stalled him for

9    a long period of time and then ended up threatening him.

02:15PM 10        In one communication, he said, "Like I said, sign the

11   refund form, which is already in the mail.  I see one thing

12   posted," meaning on the Internet or a complaint somewhere, "you

13   will NEVER get paid, "never" in capital letters.  I will sue

14   you like you've never seen before.  You already slandered me

15   with a vendor," which was the person who connected the

16   defendant to the small business owner, "who already got paid

17   from us on a previous deal, so be careful what you do.  We have

18   policies and procedures to follow.  Sorry you don't like them,

19   but we have them for a reason, so sign the form, you get your

02:16PM 20   money, that simple, you go the other route, that's your

21   decision.  Oh, I don't play games, I don't have the time for

22   it, seems you do.  Do yourself a favor, go make some money

23   instead of wasting time on this nonsense, makes you no money at

24   all.  Please sign so I can process your refund.  Thanks, Joe."

25        Now, this is the kind of thing that he kept doing to

1   people.  In other communications with the same individual, he

2   threatened him, just as he did here with suing him.  So he

3   destroyed the business careers of a number of the 10 people.

4   He did it maliciously and deliberately, he did it over and

5   over, and he claims in his memorandum to you to be a small

6   business employer and working hard on his own business.

7   The reason I stated in the sentencing memorandum, we

8   grant that he ran a small business, but he used it to destroy

9   others, and we suggest, your Honor, from the defense arguments,

02:17PM 10   there's simply no basis for a downward departure.  There's no

11   basis for a lenient sentence for this defendant whose activity

12   was so malicious and so prevalent, and he truly took advantage

13   of people who had no choice.

14   I will finish by saying the one person, for example,

15   that is so tangible to you that had no choice was the woman who

16   had to take a $125,000 loan just to try to keep her business

17   operating because the defendant had taken her funds, stalled

18   her for so long that she couldn't stay alive without some

19   immediate input of cash.

02:17PM 20   She tried to do the best she could under that forced

21   loan.  She couldn't make the payments even after the lender was

22   kind enough to her to say we will let you adjust your payments,

23   and when she finally defaulted, that lender went back to the

24   defendant's associate in Florida and said we want our

25   commission of $9,000 we paid to you, we want it back.  She came

1  to the defendant, said you have to repay me $4500 because

2  that's what I paid you out of it.  He refused.  He stalled her.

3  Your Honor, this defendant richly deserves the sentence of 54

4  months.  Thank you.

5       THE COURT:  All right.  Thank you.  All right.

6  Mr. Chambers.

7       MR. CHAMBERS:  Judge, if I may, Mr. Angelo stands

8  before the Court.  He's 60 years old.  He did run a small

9  business for many, many years, almost over 30 years.  He's been

02:18PM 10  married to the same woman.  She's in the courtroom in support

11  of him, his wife, Robin, for 37 years.

12       Your Honor, since the charges occurred and

13  Mr. Angelo's has been on probation, his business was closed

14  prior to that.  There is no way he's ever going to be involved

15  in that type of business again.

16       For the last two years while on probation, he's done

17  nothing but work to support his wife and his family.  He drives

18  for Uber seven days a week, your Honor.  It's a completely

19  different business.  He's not in the loan or mortgage business

02:19PM 20  again.

21       I would submit, yes, he completely accepted

22  responsibility, that's why we're here today.  I have a duty as

23  his attorney to make legal arguments, and one of the legal

24  arguments I made at the inception of this case was that there

25  was a fine line between civil liability and criminal liability,

1    and I understand what my Brother is saying about how Mr. Angelo

2    has hurt and affected the lives of many of these people that

3    own businesses, and for that he's truly sorry, your Honor, and

4    I would submit that at age 60, he has no reason to ever, ever

5    be involved with people's money like that again or be involved

6    in giving or getting loans for people, so his ability to

7    re-offend I would submit is very low, your Honor.

8         Being on probation for two years, like I said, he's

9    not even picked up a parking ticket.  He's lost his home.  He

02:20PM 10   lost his business.  We're not -- I'm not standing before you

11   saying he has a gambling addiction problem, but I would submit,

12   Judge, he did have a serious gambling problem at the time, as

13   his tax returns and the monies, a lot of this money was used

14   gambling, and I would submit, Judge, these were cases where

15   people applied, and there was a contract at the beginning, and

16   they were sophisticated business people, and in these

17   contracts, it stated very clearly that their deposits would be

18   at risk.

19        I understand the government's position, obviously, and

02:21PM 20   my client pled guilty to wire fraud, and he's accepting

21   responsibility for taking these people's money, but I believe

22   in his mind, on each individual basis he actually meant to give

23   the money back, and he thought he would win it back gambling,

24   et cetera.  He went down a bad path, and for that Judge, he's

25   very sorry, but I would submit that this is a case that falls

1   outside of the heartland, and I did quote in my memorandum, I

2   talked about *U.S. vs. Prosperi*, which was a First Circuit case,

3   2012, where that had to do with the Big Dig and the two owners

4   of that company involved in a scheme defrauding the government

5   of millions and millions of dollars, your Honor, but I think

6   why I'm asking the Court to step back and look at this in a

7   different way is because here Mr. Angelo prior to this had

8   never been in trouble.

9           He never did anything wrong, Judge, and in this case,

02:22PM 10  this wasn't something that he did in a violent way, and I know

11  my Brother said he threatened these people, but I would say

12  there's a distinction here between civil and criminal, and in

13  these cases where he says, you know, I'll sue you, he's talking

14  to business people.

15          In a lot of these cases, Mr. Angelo was sued civilly

16  and he defended, in fact, one of them he won.  The case was

17  dismissed civilly, so some of these cases held up to where

18  maybe he would have been liable in a civil setting, but, again,

19  I'm making these arguments, but he's fully accepted

02:22PM 20  responsibility.

21          I would submit that he did have a gambling problem.  I

22  would submit that based on his age and where he is in life and

23  what he's gone through in facing these charges, your Honor,

24  this is a person that should have no reason to ever, ever, ever

25  be before this Court again or ever involved in anything like

1    this, and for all those reasons, I'm asking for leniency for my

2    client, and I'm asking the Court to adopt my argument with

3    respect to the fact that this case does fall outside of the

4    heartland, and I would ask for a departure where right now what

5    he's looking at for a sentence, Judge, I don't think that that

6    would be in the interests of justice for a man that's never

7    been in trouble before, your Honor.  I know my client would

8    like to also address the Court briefly.

9         THE COURT:  All right.  Before that, is there any

02:23PM 10   response, Mr. Wild?

11        MR. WILD:  Yes, briefly, your Honor.  First of all,

12   there was never a case the defendant ever, ever won.  The one

13   case that was dismissed was dismissed only because the victim

14   company had been destroyed and went into bankruptcy, and the

15   bankruptcy trustee, therefore, owned the company and the

16   bankruptcy trustee dismissed the suit against the defendant

17   because there were no assets for the trustee to recover from

18   the defendant.  That is the only reason one case was dismissed.

19   The defendant lost other cases.

02:24PM 20        One final comment, if I may, your Honor, is that there

21   was $186,000 that was received by the defendant and his family

22   as a result of his actions to hide assets during the time that

23   he knew civil suits were pending and that the government was

24   investigating.  Thank you.

25        THE COURT:  All right.  Thank you.  Mr. Angelo, do you

1    wish to address the Court before I impose sentence?

2         THE DEFENDANT:  Yes.  Your Honor, thank you for

3    allowing this time.  First I'd like to say I'm so sorry for the

4    loss all these people had to go through.  I tried so hard to

5    gamble my way out of this problem, but I only got deeper and

6    deeper.

7         I'm very humble and ashamed of my actions.  Because of

8    my actions, I lost everything as well.  Your Honor, I'm 60

9    years old and work 7 days a week.  All I think about every day

02:25PM 10   is getting these people back their money and supporting my

11   family.  I sincerely hope you can find deep in your heart given

12   this broken person before you who made a terrible mistake a

13   second chance at life and so I can make the situation right.

14   Thanks for listening.

15        THE COURT:  Thank you.  All right.  This is a

16   cold-hearted crime, to be blunt about it.  These are victims

17   who are small business owners.  There were at least 10 of them,

18   maybe more.  This was an elaborate course of conduct, a scheme

19   that lasted for multiple years, involved multiple lives and

02:25PM 20   falsehoods.

21        This was not a one-time moment of weakness.  This was

22   not a series of technical violations or something even close to

23   the line, it was simply theft, and theft from vulnerable

24   victims, perhaps not little old ladies on social security but

25   close enough, small business owners who could ill-afford the

1   loss, not stealing from big institutions, stealing from the

2   government or big banks or insurance companies, it's not like

3   that's okay, but these victims here were vulnerable, unusually

4   so, and the defendant knew that and preyed on them and lied to

5   them over and over and over and over again, and a consequence

6   has to flow from that, a serious consequence, not just simply a

7   promise that it won't happen again but something much more

8   significant than that.

9       It's true the defendant is 60 years old and that he

02:27PM 10   has no criminal history to speak of.  His family appears to

11   love him.  Of course, he lied to his family, has brought shame

12   on them.  He has put his wife in financial peril for no good

13   reason.  He says all of this is because of the gambling

14   addiction.

15       The word "addiction" is thrown around a lot these

16   days.  There's no physical issue here.  There's no chemical or

17   physiological change.  It's not like a drug addiction.  I have

18   no doubt that the behavior at some level was compulsive or that

19   there was a problem, but I don't even have a psychiatrist or

02:28PM 20   psychological report, and it's really not an excuse.

21       I mean, you have to live with the consequences of your

22   actions, and the idea that you are making things worse because

23   you thought you could gamble your way out of it does not move

24   me particularly, so what to do with all of this?

25       The guideline sentence, the low end is 51 months in

1    prison, which is more than four years.  I'm struggling to see

2    why that's not the appropriate sentence here, given the facts

3    and circumstances.  Again, it's cold.  It's a cold crime.  It's

4    not a heat of passion crime, not a momentary crime, not a crime

5    of youth.

6          I mean, he's 60 years old, but that kind of cuts both

7    ways, doesn't it?  17-year olds do stupid things all the time,

8    but by the time you're 50 or 60, you ought to know better and

9    not to have the judgment and experience to live a law-abiding

02:29PM 10   life.

11          What I'm going to do is this.  My sense is that the

12   guideline range is perhaps on the high end, and as an act of

13   mercy and a little more than that, I'm going to impose a

14   shorter sentence, but it is going to be a significant sentence

15   of imprisonment because the defendant deserves and has earned

16   it.

17          What I'm going to do is to impose a sentence of 40

18   months in prison, which is considerably below the guideline

19   range.  It's still a long sentence.  It's nearly three and a

02:30PM 20   half years.  In good conscious, I can't go below that, and I'm

21   going to struggle even to justify that departure downward from

22   the guidelines, but that's the sentence I'm going to impose.

23          I'm not going to impose a fine because to the extent

24   there's any money here at all, and I don't think there is, it

25   ought to go to the victims, and I'm going to impose a

1   three-year term of supervised release as well, and I will make

2   the recommendation that the defendant serve his term of

3   imprisonment either at Devens or as close as possible to

4   Massachusetts.

5   MR. CHAMBERS:  Thank you, your Honor.

6   THE COURT:  All right.  With that, I'm going to

7   formally state the sentence I'm going to impose followed by a

8   formal statement of the reasons.  When I've done that, I'll

9   give counsel a final opportunity to make any additional

02:32PM 10   objections or corrections or additions before I formally impose

11   it.

12   Pursuant to the Sentencing Reform Act of 1984 and

13   having considered the sentencing factors set forth at

14   18 United States Code, Section 3553(a), it is the judgment of

15   the Court that the defendant, Joseph L. Angelo, is hereby

16   committed to the custody of the Bureau of Prisons to be

17   imprisoned for a term of 40 months.

18   This term consists of terms of 40 months on Counts 1

19   to 11 to be served concurrently.  The Court makes a judicial

02:32PM 20   recommendation that the defendant shall be incarcerated at a

21   facility commensurate with security as close as possible to

22   Massachusetts, either at Devens, if that space is available, or

23   if it is not available, appropriate elsewhere close to

24   Massachusetts.

25   The Court makes a further jurisdictional

1    recommendation that the defendant receive gambling treatment

2    while in Bureau of Prisons' custody.  Upon release from

3    imprisonment, the defendant shall be placed on supervised

4    release for a term of three years.  This term consists of terms

5    of three years on all counts to run concurrently.  Within 72

6    hours of release from Bureau of Prisons, the defendant shall

7    report in person to the district to which he is released.

8         The defendant is ordered to make restitution to the

9    victims in the amounts indicated in the pre-sentence report,

02:33PM 10   which will be set forth in detail in the judgment.

11        There are 10 identified victims with an amount

12   totaling $1,164,568.69.  Any payment made that is not payment

13   in full shall be divided proportionately among the parties

14   named.  Payment of restitution shall begin immediately and

15   shall be made according to the requirements of the Federal

16   Bureau of Prisons' inmate responsibility program while the

17   defendant is incarcerated and according to the Court-ordered

18   repayment schedule during the term of supervised release.

19        All restitution payments shall be made to the clerk,

02:34PM 20   U.S. District Court to transfer to the identified victims.  The

21   defendant shall notify the United States Attorney for this

22   district within 30 days of any change in mailing or residence

23   address that occurs while any portion of the restitution

24   remains unpaid.

25        While on supervised release, the defendant shall

1    comply with the following terms and conditions:

2         He must not commit another federal, state or local

3    crime and must not unlawfully possess a controlled substance.

4         I'm suspending drug testing conditions based on my

5    determination that he poses a low risk of future substance

6    abuse.  He must cooperate in the collection of DNA as directed

7    by probation.  He must comply with the standard conditions that

8    have been adopted by the Court, which are set forth at 5D1.3C

9    of the Sentencing Guidelines, and which will be set forth in

02:35PM 10   detail in the judgment.

11        He is prohibited from frequenting or being present at

12   establishments whose primary purpose or function is gambling.

13   He's prohibited from participating in any gambling activities

14   of any kind, whether casino gambling, online gambling,

15   lotteries, instant scratch tickets, Keno, and any other

16   activities similar in nature.

17        He must attend a gambling specific treatment program

18   and/or meetings as directed by probation.  He must pay the

19   balance of any restitution imposed according to a Court-ordered

02:35PM 20   repayment schedule.  He's prohibited from incurring new credit

21   charges or opening additional lines of credit without the

22   approval of probation while any financial obligations remain

23   outstanding.

24        He must provide the probation office access to any

25   requested financial information which may be shared with the

1    financial litigation unit of the U.S. Attorney's Office, and he

2    shall be required to contribute to the costs of evaluation,

3    treatment, programming and/or monitoring based upon the

4    availability to pay or availability of third-party payment.  He

5    shall pay to the United States a special assessment of $1,100,

6    which shall be due immediately, and the government's motion for

7    entry of order of forfeiture is granted.

8         You may be seated.  In terms of the formal reasons for

9    the sentence, it is a nonguideline sentence imposed for the

02:36PM 10   reasons indicated, primarily focusing on the defendant's age

11   and lack of criminal history.  I do think supervised release is

12   appropriate under the circumstances, and I'm imposing no fine

13   because to the extent that there are financial resources

14   available, they should go to pay the large restitution

15   obligation.

16        What is the government's view on self-surrendering,

17   you do not oppose that, right?

18        MR. WILD:  No objection to self-surrender.

19        THE COURT:  It is further ordered that the defendant

02:37PM 20   self-surrender at the institution designated by the Bureau of

21   Prisons six weeks from today, June 11th.

22        Do counsel have any addition or correction or

23   objection to that sentence not previously raised?

24        MR. WILD:  None from the government, your Honor.

25        THE COURT:  Mr. Chambers.

1          MR. CHAMBERS:  No objection, I just ask that you

2    reserve my rights.

3          THE COURT:  All right.  The sentence is hereby imposed

4    as stated.

5          Mr. Angelo, let me give your advice of rights.  You

6    can appeal your conviction if you believe that your guilty plea

7    was unlawful or involuntary or if there was some other

8    fundamental defect in the proceeding that has not been waived.

9    You have a right to appeal your sentence under some

10   circumstances if you believe the sentence was contrary to law.

11         If you're unable to pay the costs of appeal, you may

12   ask permission to have those costs waived and appeal without

13   pain.  You must file any notice of appeal within 14 days after

14   the entry of judgment, and if you request, the clerk will

15   immediately prepare and file a notice of appeal on your behalf.

16         Is there anything further, Mr. Wild?

17         MR. WILD:  No, your Honor, thank you.

18         THE COURT:  Mr. Chambers.

19         MR. CHAMBERS:  No, Judge, thank you.

02:38PM 20   THE COURT:  Thank you.  We'll stand in recess.

21         THE CLERK:  All rise.

22         (Whereupon, the hearing was adjourned at 2:38 p.m.)

23

24

25

1              C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT )

4    DISTRICT OF MASSACHUSETTS ) ss.

5    CITY OF BOSTON )

6

7              I do hereby certify that the foregoing transcript,

8    Pages 1 through 25 inclusive, was recorded by me

9    stenographically at the time and place aforesaid in Civil

10   Action No. 16-10323-FDS, UNITED STATES OF AMERICA vs. JOSEPH L.

11   ANGELO, JR. and thereafter by me reduced to typewriting and is

12   a true and accurate record of the proceedings.

13              Dated May 17, 2018.

14

15                        s/s Valerie A. O'Hara

16              _____

17              VALERIE A. O'HARA

18              OFFICIAL COURT REPORTER

19

20

21

22

23

24

25